**Ricky COOPER, et. al., Plaintiffs,**

v.

**TOSHIBA HOME TECH. CORP., f/k/a Toshiba Heating Appliances Co., Ltd., Defendant.**

**No. Civ.A. 97–D–301–N.**

United States District Court, M.D. Alabama, Northern Division.

Sept. 23, 1999.

1270

W. Lee Pittman, Birmingham, Al, for Plaintiffs.

James B. Carlson, Rhonda Chambers, Birmingham, AL, H. Michael O'Brien, New York City, Robert E. Feigenbaum, Berryman, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Toshiba Home Technology Corporation's ("Toshiba") Motion For Summary Judgment ("Mot.") along with its Memorandum Brief ("Def.'s Mem."), filed February 10, 1999. Ricky and Carol Cooper ("Plaintiffs") filed a Memorandum Brief In Response To Toshiba Home Technology Corporation's Motion For Summary Judgment ("Pls.' Resp.") on March 4, 1999. Defendant Toshiba filed a Reply on March 11, 1999. Also before the court is Defendant Toshiba's Motion In Limine To Exclude The Testimony Of Plaintiff's Expert ("Mot. In Limine"), filed on February 10, 1999. Plaintiffs filed a Memorandum Brief In Opposition To Toshiba Home Technology Corporation's Motion In Limine ("Pls." Br.) on March 4, 1999. Defendant Toshiba filed a Reply on March 11, 1999. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant Toshiba's Motion For Summary Judgment is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The Parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to deter-

mine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a

"genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At approximately 8:30 a.m. on January 16, 1995, a fire burned through the home of Carol Cooper, killing her son, Billy Cooper.[1] (Compl.¶ 1.) Carol, Johnny and Billy Cooper lived in a trailer home in Montevallo, Alabama. (*Id.*) In addition to taking the life of their son, the fire destroyed the Cooper residence, leaving little more than the home's metal frame. (Def.'s Ex. 4 at 2.)

At the time of the fire, Carol Cooper used three portable kerosene heaters to heat her home. (C. Cooper Dep. at 31.) However, only two of the heaters worked. (*Id.*) One of the working heaters sat in the kitchen. (*Id.* at 43.) The second working heater was in the hall near the living room. (*Id.* at 43–44.) Carol Cooper did not purchase this heater. She received it from Laura Richards, the mother-in-law of Carol Cooper's daughter. (*Id.* at 60.) The third, non-working heater rested by the back door. (*Id.* at 67.) Carol Cooper purchased this third heater in 1993 and it was never operational. (*Id.* at 142.) While Carol Cooper does not remember many physical characteristics of the heaters (*Id.* at 44, 67), she did know how to properly operate them. (*Id.* at 85.) Because the heaters burned kerosene, Carol Cooper never used a fuel other than kerosene. (*Id.* at 96.) She also took care not to place the heaters too close to any combustibles. (*Id.* at 44 and 142.)

---

1. Billy Cooper was the son of Ricky and Carol Cooper. Ricky and Carol Cooper are divorced and Ricky Cooper had not lived in the subject trailer since 1991. (R. Cooper Dep. at 7–8.)

On the day preceding the fire, Carol Cooper fueled and lit the two working heaters around 4:00 p.m. (*Id.* at 57.). Carol Cooper left the heaters on throughout the night in order to heat the trailer. (*Id.* at 83.) On the morning of January 16, 1995, when Carol and Johnny Cooper left the trailer, both functional heaters were operating. (*Id.* at 105; J. Cooper Dep. at 59.) Billy Cooper did not leave that morning, though, because he was not feeling well. (C. Cooper Dep. at 105.)

While the exact cause of the fire is disputed by the parties, Plaintiffs allege that a Turco 2010 kerosene heater, manufactured by Defendant Toshiba, caused the fire. (Compl.¶ 1.) Deputy State Fire Marshal E.S. Paulk ("Paulk") investigated the fire on the day it occurred. (Def.'s Ex. 4 at 2.) Paulk noted that the electrical wiring in the home did not malfunction. (*Id.*) He observed that the area of the home with the greatest amount of damage was the entrance to the hallway connecting the living room with the rear portion of the trailer. (*Id.* at 2.) The fire originated around a kerosene heater located in this area. (*Id.*) Paulk concluded from his observations that the kerosene heater near the hallway was the most likely cause of the fire. (*Id.* at 3.) Two other kerosene heaters were found in the trailer. One near the kitchen appeared to be in operation at the time of the fire while one near the back door was not operating. (*Id.* at 2–3.)

A few days after the fire either Ricky or Johnny Cooper picked up all three heaters and took them to Ricky Cooper's house. (R. Cooper Dep. at 57 and J. Cooper Dep. at 63–66.) Ricky Cooper intended to keep the heaters until he "got with an attorney and had an expert to look at them." (R. Cooper Dep. at 58.) Shortly thereafter, an expert [2] came to Ricky Cooper's home and inspected the three heaters. (*Id.* at 59.) Approximately two months later, Ricky Cooper took the heater alleged to have

caused the fire, that is, the one near the hallway, to his attorney's office. (*Id.* at 100.) Thereafter, Ricky Cooper discarded the other two heaters. (*Id.* at 61.) He threw away the two heaters because they served as reminders of his son's death and the Deputy Fire Marshal had said they were not responsible for the fire. (*Id.*) Plaintiff Ricky Cooper's attorney told him nothing about whether to keep the two heaters that he threw away. (*Id.* at 100.) Plaintiffs also allowed the destruction of what appeared to be melted plastic containers. (Def.'s Mem. at 11.) While the exact time line is unclear, sometime thereafter Plaintiffs hired the current expert in this case, Dr. Henderson, to examine the remaining heater.

Ricky and Carol Cooper filed this action on November 25, 1996. Plaintiffs filed suit in their individual capacities and as co-administrators for the estate of their deceased son, Billy Cooper. In their Complaint, Plaintiffs allege that the death of their son stemmed from a fire which was caused by a defective kerosine heater, sold, distributed and/or manufactured by Defendant Toshiba. (Compl.¶ 1–2.) On February 10, 1999, Defendant Toshiba filed its Motion For Summary Judgment. In its Motion, Defendant Toshiba relies, in part, upon its concurrently filed Motion In Limine To Exclude The Testimony Of Plaintiffs' Expert, Dr. Richard W. Henderson. (Mot. at 2.) Defendant Toshiba presents two main contentions. First, Defendant Toshiba argues the court should dismiss Plaintiffs' claims because Plaintiffs have caused spoliation of physical evidence, thereby prejudicing Defendant Toshiba's ability to Defend this action. (Def.'s Mem. at 19.) Second, Defendant Toshiba argues the court should grant summary judgment because the testimony of Plaintiff's expert, Dr. Henderson, must be excluded. (Mot. In Limine at 9.) Exclusion of Dr. Henderson's testimony, Defen-

---

**2.** The name of this expert is unknown. (Mot. In Limine at 2.) Plaintiffs terminated him as their expert and hired Dr. Henderson. (*Id.*) Plaintiffs have not revealed the original ex-

pert's identity. (*Id.*) For purposes of this Order the court is not referring to the original expert unless otherwise specified. Dr. Henderson will be referred to by name.

dant Toshiba argues, would effectively leave Plaintiffs without proper evidence to survive summary judgment. (*Id.* at 13.)

## IV. DISCUSSION

### A. Plaintiffs' Warning Claims

Plaintiffs concede that Defendant Toshiba is entitled to summary judgment as to Plaintiffs' claims based on failure to warn or failure to adequately warn. (Pls.' Resp. at 3.) Therefore, the court finds Plaintiffs' claims based on failure to warn or failure to adequately warn are due to be dismissed.

### B. Defendant Toshiba's Spoliation Claims

■ Defendant Toshiba contends that summary judgment is warranted because Plaintiffs caused spoliation of evidence critical to Defendant Toshiba's defense.[3] Under Alabama law,[4] four factors must be considered in deciding the appropriate remedy for spoliation of evidence: (1) the importance of the evidence destroyed; (2) the culpability of the offending party; (3) fundamental fairness; and (4) alternative sources of information. *See Cincinnati Ins. Co. v. Synergy Gas, Inc.*, 585 So.2d 822 (Ala.1991). When applying these factors, a court must remember that "the sanction of dismissal is the most severe sanction that a court may apply." *Iverson v. Xpert Tune, Inc.*, 553 So.2d 82, 87. Moreover, public policy encourages "affording litigants a trial on the merits whenever possible." *Cincinnati*, 585 So.2d at 827.

■ Defendant Toshiba argues dismissal is appropriate because Plaintiffs' failure to preserve two heaters, plastic containers, and Plaintiffs' destroyed home has prejudiced Defendant Toshiba's ability to defend the case.[5] (Def.'s Mem. at 19.) Defendant Toshiba cites to various cases in support of its position. In the first case Defendant Toshiba cites, the Alabama Supreme Court upheld the dismissal of plaintiff's claims relating to components of the allegedly defective product which Plaintiffs had willfully destroyed. *See generally, Cincinnati*, 585 So.2d 822. In the second case upon which Defendant Toshiba relies, the plaintiff's claims were dismissed because he allowed the subject evidence, a fuel pump for a van, to be replaced and discarded. *Iverson*, 553 So.2d at 88. Defendant Toshiba's supporting cases are distinguishable from the instant action because here Plaintiffs have not destroyed any portion of the allegedly defective product. In this action, Defendant Toshiba argues that the missing evidence "may have provided some relevant information." (Def.'s Mem. at 24.) However, Plaintiffs have not even alleged that the missing two heaters caused the fire or were manufactured by Defendant Toshiba. Additionally, Plaintiffs here did not destroy the allegedly defective product. The court finds that, although the heaters, containers and home may have been relevant, that does not make them critical, or even necessary to Defendant Toshiba's case.

■ The court is also not persuaded that the culpability of Plaintiffs is obvious. When a party maliciously destroys evidence, that is, with the intent to affect the litigation, that party is more culpable for spoliation. *See id.*, at 824, 827. Further-

---

3. Spoliation is the negligent or intentional destruction of evidence. Black's Law Dictionary 1401 (6th ed.1990).

4. A federal court, sitting in diversity, must apply federal procedural law and state substantive law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties in this case agree that Alabama law applies. Thus, the court will apply Alabama law on Defendant Toshiba's spoliation claims.

5. Though Defendant Toshiba's Memorandum Brief mentions the missing heaters, containers and home (Def.'s Mem. at 19.), it does not discuss Plaintiffs' spoliation of the home. Defendant Toshiba alleges no facts and asserts no legal arguments as to the alleged spoliation of the home. Therefore, the court finds that Defendant Toshiba's claims regarding spoliation of Carol Cooper's home are due to be denied.

more, a party deemed to have knowledge as to the importance of evidence for litigation will be held to a higher standard with regards to spoliation. *See id.* In the case of *Cincinnati,* the plaintiffs disposed of evidence under the supervision of Plaintiffs' insurance company. *See id.,* at 827. The Alabama Supreme Court found this conduct to be inexcusable from a party that knew of the importance of such evidence for future litigation. *See id.* Here, it is not "undisputed," as Defendant Toshiba alleges, that Plaintiffs disposed of the two heaters under an attorney's supervision. (Def.'s Mem. at 24.) While Plaintiffs had retained counsel at the time they disposed of the heaters (R. Cooper Dep. at 100), Defendant Toshiba alleges no facts that Plaintiffs' attorney knew or should have known Plaintiffs would destroy potentially relevant evidence.

Further, the court finds that allowing Plaintiffs to proceed does not offend traditional notions of fundamental fairness. Defendant Toshiba contends that "having had the opportunity to inspect all three heaters, fire scene and fuel containers," affords Plaintiffs an unfair advantage. (Def.'s Mem. at 23.) However, while Plaintiffs allege the surviving heater caused the fire, the mere existence of that heater does not prove Plaintiffs' case. Plaintiffs will still have to show the surviving heater caused the fire. While it is true, as Defendant Toshiba argues, that the missing heaters and containers and the fire scene would be factors to evaluate when examining the cause of the fire (Def.'s Mem. at 19), these items are not critical to the case before the court. The court finds that the absence of these items does not prevent Defendant Toshiba from arguing the surviving heater was not defective. Additionally, from the record before the court it appears that Plaintiffs' expert, Dr. Henderson, only examined the surviving heater and not the fire scene itself. (Mot. In Limine at 2.)

The court agrees with Defendant Toshiba that "no alternative sources of information" exist for Defendant Toshiba to review as to the cause of the fire. (Def.'s Mem. at 24.) However, the court notes that the instant action revolves around the issue of whether or not the surviving kerosene heater caused the fire of January 16, 1995. Plaintiffs do not rely on the missing heaters for their case. Instead, Plaintiffs base their entire case on the assertion that the surviving heater did cause the fire. (Compl.¶ 1.) While Defendant Toshiba would perhaps benefit from their own examination of all the evidence, it is not incumbent on Defendant Toshiba to prove how the fire started. *See generally, Atkins v. American Motors Corp.,* 335 So.2d 134 (Ala.1976). Therefore, based on the foregoing, the court finds that the absence of alternative sources of information does not unduly prejudice Defendant Toshiba's ability to litigate this case.

Though it is clear Plaintiffs willfully destroyed evidence relevant to their claims, the court finds that they did not do so maliciously. Further, the one piece of evidence critical to this matter still exists. Plaintiffs' claims rest on a theory that the one surviving heater caused the January 16, 1995 fire. Accordingly, this court finds that Plaintiffs' may proceed on their claim that the surviving heater caused the fire, despite their spoliation of evidence.

### C. Defendant Toshiba's Motion In Limine

Defendant Toshiba moves this court, in limine, to exclude the testimony of Plaintiffs' expert, Dr. Richard Henderson. (Mot. In Limine at 1.) Defendant Toshiba argues the court should exclude Dr. Henderson's testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)[6]. The court must first determine

---

**6.** Both parties correctly note that the court articulated principles by which to evaluate expert testimony in *Browder v. Gen. Motors*

*Corp. See* 5 F.Supp.2d 1267 (M.D.Ala.1998). The court restates those principles here.

**1276**

whether Dr. Henderson's testimony is required.

█ Plaintiffs' claims fall under the judicially created Alabama Extended Manufacturers Liability Doctrine ("AEMLD"). *See Atkins,* 335 So.2d 134. To establish a prima facie case under the AEMLD, Plaintiff must show: (1) that Toshiba manufactured, designed or sold a defective, unreasonably dangerous product; (2) that the product reached the consumer in substantially the same condition in which it was sold; and (3) that the product injured the consumer when it was put to its intended use. *Beam v. Tramco, Inc.,* 655 So.2d 979, 981 (Ala.1995).

█ "[A] defective product is one that is unreasonably dangerous, i.e., one that is not fit for its intended purpose or that does not meet the reasonable expectations of the parties." *Id.* at 981. Moreover, "it makes no difference whether it is dangerous by design or defect. The important factor is whether it is safe or dangerous when the product is used as it was intended to be used." *Casrell v. Altec Indus., Inc.,* 335 So.2d 128, 133 (Ala.1976). Nevertheless, "the manufacturer of a product is not an insurer against all harm that may be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product. Likewise, the failure of a product does not presuppose the existence of a defect. Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown." *Townsend v. General Motors Corp.,* 642 So.2d 411, 415 (Ala.1994) (citations omitted). To survive summary judgment, Plaintiff must present "substantial evidence" to establish a defect under the AEMLD. *Id.* at 418 (affirming grant of summary judgment in favor of manufacturer because "plaintiffs did not present substantial evidence to establish a defective design under the AEMLD"); *see also Jordan v. General Motors Corp.,* 581 So.2d 835, 837 (affirming summary judgment "[b]ecause [plaintiff] presented no evidence

other than evidence that she received injuries as a result of an automobile accident while wearing a GM seat belt, we hold that she did not present substantial evidence to support a claim under the AEMLD"). Pure speculation or conjecture will not suffice. *General Motors Corp. v. Edwards,* 482 So.2d 1176 (Ala.1985).

█ When the product in question is of a complex and technical nature such that a lay juror could not, in the absence of expert testimony, infer that a defective condition of the product caused the product's failure and caused the resulting injury to the plaintiff, expert testimony is a necessary component of a plaintiff's case. *Townsend,* 642 So.2d at 415; *Brooks v. Colonial Chevrolet–Buick,* 579 So.2d 1328, 1333 (Ala.1991). Here, Plaintiff alleges that a kerosene heater manufactured by Defendant Toshiba was defective. (Compl.¶ 1.) Based on the foregoing, the court finds that the design and manufacture of the kerosene heater are complex and technical matters, and that a lay juror is unlikely to be able to determine whether one was defective without the aid of expert testimony. Therefore, the court finds that Plaintiff must use expert testimony to establish whether the kerosene heater was defective. *See Townsend,* 642 So.2d at 416. Finding Dr. Henderson's testimony necessary, the court must now decide whether Dr. Henderson is qualified to testify as an expert.

Before a witness can proffer an expert opinion, he or she must be qualified as an expert. *See* Fed.R.Evid. 702; *Townsend,* 642 So.2d at 423 (citing *McKelvy v. Darnell,* 587 So.2d 980 (Ala.1991).) To qualify, the putative expert must have such knowledge, skill, experience, training, or education that his or her opinion will aid the trier of fact in understanding the evidence. *See* Fed.R.Evid. 702; *Townsend,* 642 So.2d at 423 (citing C. Gamble, McElroy's Alabama Evidence, § 127.01(5)(b) (4th ed.1991); 9 Ala. Digest Evidence Key Nos. 535, 536 (1989)). Whether a particular witness is qualified to testify as an expert

is left to the sound discretion of the trial court. *See Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Mitchell*, 954 F.2d 663 (11th Cir.1992); *Townsend*, 642 So.2d at 423 (citing *McKelvy*, McElroy's at § 127.01(5)(b)).

■ "The critical concerns of Rule 702 are evidentiary reliability and relevancy," *Joiner v. General Electric Co.*, 78 F.3d 524, 529 (11th Cir.1996). These concerns are addressed by the two-step inquiry articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). First, the court must determine whether an expert's proposed testimony pertains to scientific knowledge by applying the criteria suggested in *Daubert*. *Id.* at 589–90, 113 S.Ct. 2786. This requires the court to rule out "subjective belief or unsupported speculation." *Id.* at 590, 113 S.Ct. 2786. Second, the court must consider whether the testimony assists the trier of fact in understanding the evidence or determining a fact in issue. *Id.* at 591, 113 S.Ct. 2786. This requirement, in essence, is a relevance inquiry. *Id.* at 591–93, 113 S.Ct. 2786. The relevancy relationship between a scientific theory and facts at issue was described by the Supreme Court as one of "fit." *Id.* at 591, 113 S.Ct. 2786. The expert's opinion must "fit" the facts of the case. *Id.*

Defendant Toshiba argues that Dr. Henderson's testimony is based upon "assumptions, speculation and subjective beliefs." (Mot. In Limine at 9.) Because Dr. Henderson has not recreated the exact factual scenario Plaintiffs' allege to have taken place, Defendant Toshiba claims that Dr. Henderson's testimony is "pure speculation." (*Id.* at 11.) Defendant Toshiba correctly notes that the court would be forced to strike Dr. Henderson's testimony if the court found it to be based on sheer speculation. (*Id.* at 12.)

Rule 702 of the Federal Rules of Evidence requires that expert testimony "assist the trier of fact to understand the evidence or determine a fact in issue."

FED.R.EVID. 702. Federal Rule of Evidence 703 requires that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing." FED.R.EVID. 703. As the Advisory Committee Notes make clear, facts or data upon which expert opinions are based may be derived from three sources. FED.R.EVID. 703 advisory committee's note. First, is the "first-hand observation of the witness." *Id.* Second, is "presentation at trial." *Id.* Third is the "presentation of data to the expert outside of court and other than by his own perception." *Id.* Tellingly, nowhere does the rule provide for an expert opinion based on sheer speculation over the circumstances surrounding the issue upon which he or she purports to provide expert testimony.

Basing an "expert" opinion on facts not in evidence is not helpful to the trier of fact in understanding the evidence or determining a fact in issue. *See* Fed.R.Evid. 702. An expert's testimony must be based on "facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Jones*, 861 F.2d at 662 (citation omitted); *see also*, *Townsend*, 642 So.2d 411; *Kirk v. Griffin*, 667 So.2d 1378 (Ala.Civ.App.1995). Without an underlying basis of support, the "expert's" opinion is only one of many possible theories and interpretations of the facts at issue, and is no more or less helpful than the trier of fact's own reading of the evidence.

■ While an expert may base an opinion on facts or data reasonably relied upon by experts in the field, and this data need not be admissible in evidence, Fed.R.Evid. 703, "[t]heoretical speculations, unsupported assumptions, and conclusory allegations advanced by an expert … are [not] entitled to any weight when raised in opposition to a motion for summary judgment." *E.T. Barwick Indus. v. Walter Heller & Co.*, 692 F.Supp. 1331, 1347 (N.D.Ga.1987), *aff'd*, 891 F.2d 906 (11th Cir.1989) (cita-

tions omitted). It is well established that "a party may not avoid summary judgment on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers v. General Motors Corp.*, 770 F.2d 984, 985 (11th Cir.1985). "Conclusory allegations without specific supporting facts have no probative value." *Id.* at 986; *see also United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir.1988) ("certainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony"). Finally, when causation is the issue being addressed, " 'courts are particularly wary of unfounded expert opinion.' " *Bell v. Swift Adhesives, Inc.*, 804 F.Supp. 1577 (S.D.Ga.1992) (quoting *In re Agent Orange Product Liability Litigation*, 611 F.Supp. 1223, 1249 (E.D.N.Y.1985), *aff'd*, 818 F.2d 187 (2d Cir.1987)).

Dr. Henderson has written or presented on issues of fire and arson over three hundred times. (Pl.'s Ex. 14.) He holds a Ph.D. in chemistry and has worked with several insurance companies and law enforcement agencies, including the Federal Bureau of Investigation and Bureau of Alcohol, Tobacco and Firearms. (*Id.*) Dr. Henderson has conducted research studies on kerosene heater fires and holds two patents. (*Id.*) Most notably, he holds a patent for an anti-flareup device for kerosene heaters. (*Id.*) The court finds that he has the requisite knowledge, skill, experience, training, and education such that his opinion will aid the trier of fact in understanding the evidence in this action. *See* Fed.R.Evid. 702. Finding him well qualified to speak to issues of fire and kerosene heaters, the court looks to the facts of the case sub judice.

█ In this case the court finds that Dr. Henderson bases his testimony on more than pure speculation. Interpreting the facts in the light most favorable to the Plaintiff, the court finds that Dr. Henderson has done a significant amount of research and testing on kerosene heater flare-ups. (Henderson Dep. at 81; Pl. 's Ex. 14.) After examining the available evidence, Dr. Henderson considered every possible way in which the Turco 2010 kerosene heater could have flared up. (Henderson Dep. at 46–48, 143.) After ruling out gasoline as the fuel in use at the time of the fire, he concluded that a flareup could have occurred while using kerosene in the heater. (*Id.* at 82.) He did not, however, test this specific fact pattern. (*Id.*)

█ Defendant Toshiba argues that Dr. Henderson's failure to test his kerosene flareup hypothesis must lead the court to exclude his testimony. (Mot. In Limine at 9.) The court disagrees. *Daubert* does not require an expert to test every single element leading to the expert's conclusions. The expert's conclusions simply must not be "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. As discussed earlier, Dr. Henderson is intimately familiar with kerosene heaters and how they flareup. (Pl. 's Ex. 14.) Moreover, he has had ample opportunity to examine the Turco 2010 heater saved from the fire scene. (Pls.' Br. at 5.) Dr. Henderson's conclusions are based on tests he performed as well as the particular facts surrounding the fire on January 16, 1996. (Henderson Dep. at 46–48, 81–82.)

Based on the foregoing the court finds that Dr. Henderson is not basing his conclusions on a naked record, nor is he merely speculating. The court finds that he has a vast amount of experience examining kerosene heater flareups and has tested several hypotheses as to how such flareups occur. From his prior knowledge and his observations in this case, he concludes that a flareup could have occurred in the kerosene heater under the given circumstances, thus causing the fire. Therefore, the court is satisfied that Dr. Henderson's testimony is based upon scientifically valid reasoning which can be applied to the facts in issue and will assist the trier. Any questions concerning his opinion, therefore, go

to the weight and not to the admissibility of his testimony.

## V. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant Toshiba's Motion For Summary Judgment be and the same is hereby GRANTED in part and DENIED in part as follows:

1. The motion is Granted as to Plaintiffs' claims based on failure to warn or failure to adequately warn and those claims are hereby DISMISSED with prejudice; and

2. The motion is, in all other respects, DENIED.