567 So.2d 1314 (1990)
L.V. ANDERSON, et al.
v.
MOORE COAL COMPANY, INC., and Birmingham Southern Railroad.
MOORE COAL COMPANY, INC.
v.
L.V. ANDERSON, et al.
87-1413, 87-1543.
Supreme Court of Alabama.
September 14, 1990.
*1315 Stephen L. Poer of Haskell, Slaughter & Young, Birmingham, for appellants/cross-appellees L.V. Anderson, et al.
V. Edward Freeman II and James B. Kierce, Jr., of Stone, Patton, Kierce & Freeman, Bessemer, for appellee/cross-appellant Moore Coal Co., Inc.
T. Thomas Cottingham, F.A. Flowers III, and William S. Hereford of Burr & Forman, Birmingham, for appellee Birmingham Southern R. Co.
PER CURIAM.
L.V. Anderson and approximately 75 other residents (collectively referred to hereinafter as "Anderson") of Bessemer Gardens, a Hueytown subdivision, filed an action against Moore Coal Company, Inc. ("Moore"), Birmingham Southern Railroad Company ("BSRR"), and other defendants, alleging that Moore and BSRR had caused Bessemer Gardens to flood, both by negligently or wantonly altering the railroad bed on property adjacent to Bessemer Gardens, thus destroying an embankment that prevented the subdivision from flooding, and by violating the Jefferson County Flood Plain Ordinance ("Flood Ordinance"), which the plaintiffs allege would have prevented the flooding, had Moore and BSRR complied with it. The trial court entered summary judgment on the plaintiffs' claim concerning the Flood Plain Ordinance and submitted to the jury only the claim for negligence in the alteration of the railroad bed. The jury returned a verdict for both Moore and BSRR, and the trial court entered judgment on the verdict.
Beginning in 1939, BSRR had operated trains on a section of railroad track that it owned in Jefferson County known as the Dolonah Branch. A segment of the Dolonah Branch ran adjacent to Bessemer Gardens. The track was built on an embankment that separated a stream known as Valley Creek from Bessemer Gardens.
In 1979, BSRR stopped doing business with the Dolonah Quarry, which the Dolonah Branch serviced. In 1981, after receiving the permission of the Interstate Commerce Commission, BSRR abandoned the Dolonah Branch. BSRR contracted with *1316 Moore for Moore to reclaim the railroad tracks and "related appurtenances."
Beginning in November 1981 and concluding in May 1982, Moore removed railroad tracks, ties, and ballast (loose gravel and slag) from the Dolonah Branch. While Moore was doing this work, some of the plaintiffs complained to Moore. Lanell Guyton testified that she told Jim Moore, president of Moore, "You're lowering the railroad bed ... [and] when we have another high water it's going to come over that railroad bed, Jim." Moore stopped removing the ballast from behind Guyton's house, but it continued to remove the ballast at other points on the track. James Ray Perkins testified that he once confronted Jim Moore in a restaurant and told him that changing the railroad bed would "flood us out." He said that Mr. Moore responded by mentioning Guyton and saying "You all are just bitching and griping and a little bit of water's not going to hurt you anyway."
On December 2 and 3, 1983, within a 24-hour period, the Jefferson County area received 9.2 inches of rain, the greatest rainfall ever recorded for Jefferson County in a 24-hour period. The National Oceanic and Atmospheric Administration and the Federal Emergency Management Agency classified the rain as a 200-year rainfall event, which means that that heavy a rainfall should be expected to fall, in all probability, only once every 200 years.
Bessemer Gardens flooded during that rainfall. The record indicates that Bessemer Gardens is at a low point of a drainage basin and receives surface water drainage from 515 acres. The record also indicates that Bessemer Gardens had flooded in 1951, 1954, 1962, 1970, and 1979; furthermore, over the course of a quarter of a century, Jefferson County, the City of Bessemer, the developer of the subdivision, and the City of Hueytown had all attempted to alleviate the flooding problems, by measures as drastic as rerouting Valley Creek and installing a complex system of drainage ditches. The record indicates that on December 2-3, 1983, water was flooding into Bessemer Gardens from many locations, not just Valley Creek.
The plaintiffs filed their action in June 1984. They named Moore, BSRR, the City of Hueytown, and Jefferson County as defendants. They settled their claims with the City of Hueytown and Jefferson County before the case went to trial. They alleged that Moore and BSRR "removed tracks, ties and ballast from property located adjacent to the property occupied by the plaintiffs" and, in the process, "negligently or wantonly removed or destroyed a portion of a dike, which had prior thereto prevented flood waters from flowing onto the property occupied by the plaintiffs." The plaintiffs refer to the embankment that the railroad track is built upon as a "dike." In relation to that allegation, the plaintiffs averred that Moore and BSRR's alleged negligence or wantonness in destroying a portion of the "dike" caused their property to flood when Valley Creek flooded. They further alleged that Moore and BSRR had negligently failed to obtain the permits required by the Flood Ordinance and that Moore and BSRR performed their work in reclaiming the railroad track in a negligent or wanton manner.
The trial court granted Moore and BSRR's motion for summary judgment on the claim that they had negligently violated the Flood Ordinance. Additionally, at the close of all the evidence, the trial court directed a verdict for Moore and BSRR on the claim that they had wantonly removed the railroad tracks. The plaintiffs do not contest the judgment based on the jury verdict regarding the claim that the defendants had negligently altered the railroad bed.
The plaintiffs do contend that the trial court erred when it entered summary judgment for Moore and BSRR on the claim that they negligently violated the Flood Ordinance. In both Alabama Power Co. v. Dunaway, 502 So.2d 726, 730 (Ala. 1987), and Fox v. Bartholf, 374 So.2d 294 (Ala.1979), the Court addressed the requirements for imposing liability for negligence when a defendant violates a statute or administrative *1317 regulation. Those requirements are:
"(1) The trial judge must determine as a matter of law that the statute was enacted, or the regulation promulgated, to protect a class of persons which includes the litigant seeking to assert the statute. (The Court will not apply the statutory or regulatory standard in a tort case if its purpose was to secure to individuals the enjoyment of rights and privileges to which they are entitled only as members of the public. Restatement (Second) of Torts, § 288.)
"(2) The trial judge must find the injury was of the type contemplated by the statute or regulation.
"(3) The party charged with negligent conduct must have violated the statute or regulation.
"(4) The jury must find that the statutory or regulatory violation proximately caused the injury."
Dunaway, 502 So.2d at 730. (Emphasis original.) Accordingly, to impose liability on Moore and BSRR for negligence for violating the Flood Ordinance, the plaintiffs must prove that Moore and BSRR's violation of that ordinance proximately caused the damage they suffered. 502 So.2d at 730.
The record does not contain any evidence of any causal connection between the planitiffs' damage and Moore and BSRR's failure to obtain permits required by the Flood Ordinance. With regard to negligence, the plaintiffs presented, at most, evidence that Moore and BSRR had been negligent in the manner in which they dismantled the tracks, and the jury returned a verdict against the plaintiffs on that claim. The trial court did not err in entering the summary judgment, because the plaintiffs failed to prove that, even if Moore and BSRR had violated the statute, that violation proximately caused the plaintiffs' damage. Dunaway, at 730; Fox, at 296.
The plaintiffs also argue that the trial court erred by directing the verdict for Moore and BSRR on the wantonness claim. "`Wantonness' is defined by the Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." McDougle v. Shaddrix, 534 So.2d 228, 231 (Ala.1988); Burns v. Moore, 494 So.2d 4, 5 (Ala.1986). As the Court stated in Bishop v. Poore, 475 So.2d 486, 487 (Ala.1985), "`wantonness' is the doing of some act with reckless indifference to the knowledge that such act or omission will likely or probably result in injury." The plaintiffs contend that Jim Moore's actions involving plaintiffs Guyton and Perkins constitute sufficient evidence of wantonness to require the trial court to submit the claim of wantonness to the jury. Mr. Moore's statements do not indicate that he was aware that his work in dismantling the railroad track would likely or probably cause the plaintiffs injury or damage; indeed, even in the evidence that the plaintiffs rely on for this argument, Mr. Moore stated, in addressing the plaintiffs' complaints, "You all are just bitching and griping," which indicates that Mr. Moore did not know that his work in dismantling the tracks would likely or probably cause the plaintiffs injury or damage. The trial court did not err when it granted Moore and BSRR's motions for directed verdict on the wantonness claim.
Moore filed a cross-appeal, but all of its arguments on cross-appeal are grounds for affirming the judgment should the Court find reversible error in the issues raised by the plaintiffs.
The judgment is due to be affirmed.
87-1413 AFFIRMED.
87-1543 DISMISSED AS MOOT.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
HOUSTON, J., concurs in part, and concurs in the result in part.
HOUSTON, Justice (concurring in part, and concurring in the result in part).
I concur as to the negligence issue (the violation of the Flood Ordinance). I concur in the result as to the wantonness issue, for all the reasons expressed in my dissent *1318 in Lynn Strickland Sales & Service, Inc. v. Aero Lane Fabricators, Inc., 510 So.2d 142, 147-51 (Ala.1987).