[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 993 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 994 
William Joyner and Debra Joyner sued B P Pest Control, Inc. ("B P"), alleging that in 1998 the Joyners had a termite infestation near the front entrance to their residence and that they contacted BP to treat their residence pursuant to a Termite Soil Treatment Guarantee that BP had issued them. BP treated the Joyners' termite infestation by drilling holes through a brick walkway and an underlying concrete slab near the front entrance to the Joyners' residence, inserting an injection rod through those holes and into the soil beneath the walkway, and pumping termite killing pesticide ("termiticide") into that soil. However, according to the Joyners, BP failed to properly plug the treatment holes it drilled in the concrete slab. The Joyners alleged that, as a result of BP's actions, their basement flooded with pesticide-laden water when it rained. They asserted claims against of negligence, wantonness, fraud, and suppression against BP. In an amended complaint they also alleged that BP negligently and wantonly trained and supervised the employee who actually performed the termite treatment on the Joyners' residence. *Page 995 
A jury trial began on March 19, 2001. At the conclusion of the Joyners' case, BP moved for a judgment as a matter of law[1]; the trial court postponed ruling on the motion until the close of all the evidence. At the conclusion of a three-and-one-half-day trial, BP renewed its motion for a JML. BP argued that a broken sewer pipe, which it had requested that the Joyners produce during discovery and which it claimed was responsible for the Joyners' flooding problem, had been lost or destroyed by Burt Cox, the contractor who performed repairs to the Joyners' home in an effort to correct the Joyners' flooding problem; therefore, BP argued, it was entitled to a JML based upon the alleged spoliation of evidence. BP also argued that the Joyners failed to present substantial evidence to support their claims.
After hearing arguments on BP's motion, the trial court dismissed the jury and stated that the parties could submit briefs regarding the issues presented in BP's motion if they so desired. BP submitted a brief in support of its motion; the Joyners did not file a brief in opposition to BP's motion, but instead filed a letter with the trial court stating that they would "stand on their stated arguments made on the record before the Court."
On June 12, 2001, the trial court entered a judgment granting BP's motion for a JML and dismissing all of the Joyners' claims, with prejudice. The trial court stated no reason for granting BP's motion. The Joyners appealed to the Alabama Supreme Court; that court transferred the case to this court, pursuant to Ala. Code 1975, §12-2-7.
The Joyners argue that the trial court erred by granting BP's motion for a JML and in several of its evidentiary rulings. In regard to the JML, the Joyners argue that they presented substantial evidence to support their claims that BP acted negligently or wantonly in regard to the manner in which it treated their home for termites; that they presented substantial evidence to support their claims that BP negligently or wantonly trained or supervised the BP employee who performed the treatment; that they presented substantial evidence indicating that BP made fraudulent misrepresentations or that it suppressed material facts in connection with the 1998 termite treatment; and that a JML could not be supported on the ground of spoliation of evidence because there was no evidence indicating that the Joyners willfully destroyed the broken sewer pipe or that they knew they should have retained it.
We first address the Joyners' argument that a JML could not be supported on the ground of spoliation of evidence. The Joyners contend that the record does not support a finding that they willfully destroyed evidence that they knew would be needed to support BP's case and that therefore the trial court erred in granting BP's motion for a JML to the extent that that motion was based on an allegation of spoliation.
After the Joyners' basement flooded, they hired Cox to correct the flooding problem. In an attempt to determine whether the treatment holes were the source of the flooding, Cox exposed, and perhaps broke, the sewer pipe when he first excavated the area under the concrete slab and brick walkway, reflashed the sewer pipe where it entered the basement wall, and repoured the concrete slab over the excavated area. A few days after Cox's first excavation, the Joyners' basement flooded again, at which time the Joyners *Page 996 
also noticed that the flood water had a sewage odor that apparently was not present during earlier flooding. A few days later, Cox again excavated the area underneath the brick walkway and removed the sewer pipe, which he noted was broken at a point between one foot and three feet from the basement wall. Cox testified that he attempted to preserve the pipe at his office, but that one of his employees mistakenly disposed of it.
The parties offered conflicting evidence as to whether the sewer pipe began leaking before or after Cox's first excavation. The Joyners presented substantial evidence indicating that Cox's employees broke the sewer pipe during their first excavation and that there was no smell of sewage during the flooding that occurred before Cox's first excavation. BP presented substantial evidence, based upon the location of the soil underneath the walkway, the location of the sewer pipe both before and after its repair, and the presence of certain water stains in the basement wall near the area where the pipe ran through the wall, that the sewer pipe might have been leaking before Cox's first excavation and that it was merely a coincidence that the Joyners first noticed water leaking into their basement after BP drilled the treatment holes in the concrete slab.
There is no question but that dismissal of a party's claim may be an appropriate sanction in a case where the party deliberately disposes of evidence that it knows is important evidence for further litigation.See, e.g., Cincinnati Ins. Co. v. Synergy Gas, Inc., 585 So.2d 822, 827
(Ala. 1991). Our courts have repeatedly held that the dismissal of a party's claim or the entry of a judgment against a party is an appropriate sanction for the willful spoliation of evidence. See, e.g., CapitolChevrolet v. Smedley, 614 So.2d 439, 442 (Ala. 1993); Cincinnati Ins.Co., supra; and Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala. 1989). In 1983, our Supreme Court stated that "`willfulness,' i.e., an intentional failure, continues to be a factor, along with others, in the determination to apply the sanction of dismissal." Blair v. Cooper,437 So.2d 1249, 1252 (Ala. 1983); see also Iverson, 553 So.2d at 89 (affirming the trial court's dismissal of Iverson's claim for willful spoliation of evidence, but stating "we are not to be understood as specifically holding that Iverson is guilty of intentionally or deliberately destroying evidence"). But see Weatherly v. Baptist MedicalCenter, 392 So.2d 832, 837 (Ala. 1981) ("we do not find that element of `willfulness' in plaintiff's conduct to justify the drastic sanction of dismissal").
We note that Rule 37 does not require that a party's failure to comply with discovery be willful, deliberate, or malicious before sanctions might by imposed; it merely requires, in pertinent part, that the trial court's order in response to the party's failure to produce requested evidence be "just." See Rule 37(d), Ala.R.Civ.P. Most pertinent Alabama precedent discussing the application of Rule 37 to spoliation of evidence has arisen in the context of the sanction of dismissal. In that context, our courts have noted:
 "[T]he sanction of dismissal is the most severe sanction that a court may apply. Judicial discretion must be carefully exercised to assure that the situation warrants the imposition of such a sanction. Dismissal orders must be carefully scrutinized, and the plaintiff's conduct must mandate dismissal. We have held that `willfulness' on the part of the noncomplying party is a key factor supporting a dismissal. If one party has acted with willful and deliberate disregard of reasonable and necessary requests for *Page 997 the efficient administration of justice, the application of even so stringent a sanction as dismissal is fully justified and should not be disturbed."
Iverson, 553 So.2d at 87 (citations omitted; emphasis added); seealso Cincinnati Ins. Co., supra.
Based on our review of the record, we agree with the Joyners that the entry of a JML against them was not a just sanction under the facts of this case. In reaching this conclusion, we rely on several factors that are discussed in our caselaw and summarized in Cooper v. Toshiba HomeTech. Corp., 76 F. Supp.2d 1269 (M.D.Ala. 1999).
 "Under Alabama law, four factors must be considered in deciding the appropriate remedy for spoliation of evidence: (1) the importance of the evidence destroyed; (2) the culpability of the offending party; (3) fundamental fairness; and (4) alternative sources of information."
Cooper, 76 F. Supp.2d at 1274 (citing Cincinnati Ins. Co. v. SynergyGas, Inc., 585 So.2d 822 (Ala. 1991)); see also Verchot v. GeneralMotors Corp., 812 So.2d 296, 302 (Ala. 2001); Ex parte General MotorsCorp., 769 So.2d 903, 914 (Ala. 1999); Capitol Chevrolet, 614 So.2d at 442-43; Iverson, 553 So.2d at 88-89; see generally Marshall v. Segona,621 F.2d 763, 766-768 (5th Cir. 1980) (discussing several considerations that should be taken into account in determining whether dismissal is an appropriate sanction).
We are mindful that B P, through no fault of its own, was prevented from examining the broken sewer pipe. We are also mindful that BP offered evidence tending to indicate that the sewer pipe had been leaking to some degree before it drilled the treatment holes in the concrete slab. Specifically, there was evidence from which it could be inferred that the sewer pipe had leaked in the past at least sufficiently to make stains on the concrete block composing the exterior basement wall and on the wooden sill-plate along the bottom of the framing between the exterior basement wall and the plasterboard interior basement wall.
Nonetheless, there is not substantial evidence in the record indicating that any flooding of the Joyners' basement had ever occurred, from any source, before BP drilled holes in the concrete slab. Moreover, based on our review of the record, we conclude that BP failed to present substantial evidence indicating that the Joyners willfully disposed of the sewer pipe. Further, BP was able to cross-examine Cox and Darryl Woods, the plumber who removed the broken sewer pipe, and to review pictures of the sewer pipe before Cox removed it from the ground. We also note that BP's inability to examine the sewer pipe did not prevent it from offering engineering or other evidence in an effort to show that the Joyners' flooding problem was caused by sources other than the holes BP drilled in the concrete slab.
The Joyners introduced evidence indicating that the initial flooding of their basement occurred during the first heavy rainfall after BP drilled holes in the concrete slab. The evidence likewise tended to indicate that subsequent flooding of the basement occurred, not on a continual or daily basis, but in conjunction with rainfall.
Applying the four factors summarized in Cooper, we conclude that the dismissal of the Joyners' various claims on the ground of spoliation of evidence by the Joyners was not justified. Accordingly, we now turn to the factual issues raised by BP's motion for a JML to determine whether *Page 998 
the Joyners presented substantial evidence to support their claims.
When reviewing a trial court's ruling on a motion for a JML, we use the same standard that the trial court used initially in granting or denying the motion. Regarding questions of fact, we must determine "whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury." Bell v.T.R. Miller Mill Co., 768 So.2d 953, 956 (Ala. 2000); see also Rule 50(a), Ala.R.Civ.P.
 "Evidence is `substantial' only if it is `of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' . . . In determining whether material questions of fact exist, the court must view the evidence presented at trial in a light most favorable to the nonmoving party."
Hathcock v. Wood, 815 So.2d 502, 506-07 (Ala. 2001) (quoting West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)).
The Joyners argue that they offered substantial evidence to support their claims that BP acted negligently or wantonly in regard to the manner in which it treated the Joyners' residence for termites. We first note that the container label for "Premise 75," the chemical used to treat the Joyners residence, stated in part as to post-construction treatment under a concrete slab:
 "To apply a treatment under the slab, including attached porches, it may be necessary to drill through the slab or exterior foundation. Drill holes should be spaced in a manner that will allow for application of a continuous chemical treated zone. . . . Apply 4 gallons of solution per 10 linear feet per foot of depth to provide a uniform treatment zone. . . . Plug and fill all drilled holes in commonly occupied areas with a suitable sealant. Plugs must be of non-cellulose material or covered by an impervious, non-cellulose material."
It was undisputed that BP patched the treatment holes in the brick walkway with mortar, but that it did not plug the treatment holes in the concrete slab under the walkway. Albert Cole, an expert from Cook's Pest Control, testified that the holes in the concrete slab should have been plugged to prevent moisture from migrating through the slab. Cole testified that Cook's routinely plugged treatment holes in a concrete slab with rubber stoppers to prevent moisture from migrating through the slab and also stated that the area in which the Joyners' residence was located had a history of moisture problems. He also testified that the treatment technique used by BP created a greater risk for moisture problems than other available techniques. In addition, Dr. William Payne, a structural engineer who testified on behalf of the Joyners, stated that the Joyners' flooding problem probably would not have occurred if Johnson had plugged the treatment holes with a rubber plug.
Based on the foregoing, we conclude that the Joyners presented substantial evidence indicating that BP was negligent in the manner in which it treated the Joyners' residence for termites. Accordingly, the trial court erred in entering a JML on the Joyners' claim against BP for negligence.
In regard to the Joyners' claim that BP was guilty of wantonness in the treatment of their residence, we note that
 "`[w]antonness' is statutorily defined as '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11-20(b)(3). *Page 999 
 "`"Wantonness" has been defined by the Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. McDougle v. Shaddrix, 534 So.2d 228 (Ala. 1988).'
 "Stone v. Southland Nat'l Ins. Corp., 589 So.2d 1289, 1292 (Ala. 1991). `Wantonness is the doing of some act or omission with reckless indifference to the knowledge that such act or omission will likely or probably result in injury.' Bishop v. Poore, 475 So.2d 486, 487 (Ala. 1985); Anderson v. Moore Coal Co., 567 So.2d 1314, 1317 (Ala. 1990)."
Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala. 1994). A JML is appropriate on a wantonness claim if the plaintiff has failed to offer substantial evidence showing that the defendant knew that its act or omission would likely or probably result in injury. See Anderson v.Moore Coal Co., 567 So.2d 1314, 1317 (Ala. 1990).
There is no evidence indicating that BP knew that the failure to plug the treatment holes in the concrete slab would likely or probably result in injury. The Joyners' own expert stated that he had never experienced water migrating through a slab as had apparently occurred in this case. That portion of the trial court's judgment granting BP a JML on the Joyners' wantonness claim against BP is due to be affirmed.
The Joyners next argue that they presented substantial evidence indicating that BP negligently or wantonly trained or supervised the employee who was directly responsible for the termite treatment at issue, Mark Johnson. Their argument in this regard is premised not on the training or supervision BP gave Johnson, generally, but rather solely upon BP's awareness of one particular prior incident in which Johnson incorrectly applied termiticide at another customer's home. The Joyners contend that B P was negligent in not taking further steps to train or supervise Johnson based on its knowledge of this previous incident.
We note that "negligence is not synonymous with incompetency, and a single instance of negligence will not prove an employee incompetent . . .; the most competent employee may be negligent." Collins v. Wilkerson,679 So.2d 1100, 1103 (Ala.Civ.App. 1996).
 "[I]ncompetency is connected conjunctively with carelessness, indifference, heedlessness and recklessness. . . . `Incompetency, as related to the law of negligence, connotes "want of ability suitable to the task, either as regards natural qualities or experience, or deficiency of disposition to use one's abilities and experience properly. Incompetency connotes the converse of reliability. The term may include something more than physical and mental attributes; it may include want of qualification generally, such as habitual carelessness, disposition, and temperament."'"
McGowin v. Howard, 251 Ala. 204, 207-08, 36 So.2d 323, 325 (1948). We also note that, "`[w]anton supervision' requires that the employerwantonly disregard its agent's incompetence." Armstrong Bus. Servs.,Inc. v. AmSouth Bank, 817 So.2d 665, 682 (Ala. 2001) (emphasis added).
The prior incident upon which the Joyners attempt to rely occurred several months before Johnson treated the Joyners' residence. The Alabama Department of Agriculture sanctioned and fined BP allegedly because Johnson applied termiticide to another residence in a manner *Page 1000 
that was not in conformity with the label requirements.[2] The Department of Agriculture's complaint specifically stated that that application was "inappropriate because of the proximity of a water line leading to a drinking water well."
We conclude, based upon our review of the record, that the Joyners did not present substantial evidence indicating that Johnson did not have the ability to properly apply termiticide or that he had a "deficiency of disposition to use [his] abilities and experience properly." Collins, 679 So.2d at 1103. That portion of the trial court's judgment granting BP a JML on the Joyners' claims that BP negligently trained or supervised Johnson and that it wantonly trained or supervised Johnson is due to be affirmed.
The Joyners next argue that BP made a fraudulent misrepresentation and suppressed a material fact in connection with the 1998 termite treatment. Specifically, the Joyners contend that BP misrepresented that it "possessed the knowledge and skill to drill and treat the [Joyners'] residence without permitting toxic, contaminated water to invade the interior of the residence" and that BP "suppressed the fact that they were not able to treat their residence without causing a flood of toxic water to invade their home."
As to the Joyners' fraudulent-misrepresentation claim, BP merely informed the Joyners that it would "take care of the termites." When Mr. Joyner questioned Johnson about why he was drilling holes in the brick walkway, Johnson stated, "[T]hat's the way you treat them." The Joyners did not present substantial evidence indicating that BP made any express representation regarding whether BP's treatment method might permit water to migrate through the treatment holes or that it would prevent water from migrating through the treatment holes. Even if such a representation was made, there was not substantial evidence showing that the representation was untrue, i.e., that BP did not possess the knowledge and skill to treat the Joyners' residence without permitting contaminated water to invade the interior of the residence. There merely was evidence indicating that BP did not employ such knowledge or skill, i.e., that it was negligent. Similarly, as to the Joyners' suppression claim, the Joyners presented no evidence indicating that BP knew that its treatment method might cause flooding in the Joyners' basement. See McGowan v. Chrysler Corp., 631 So.2d 842, 847
(Ala. 1993) ("A party must have knowledge of a fact in order to be liable for its suppression."). That portion of the trial court's judgment dismissing the Joyners' fraudulent-misrepresentation and suppression claims is due to be affirmed.
The Joyners next argue that the trial court erred by refusing to permit them to introduce evidence showing that Johnson had caused BP to be sanctioned and fined by the Alabama Department of Agriculture when he allegedly misapplied termiticide to another person's residence in a manner that permitted the termiticide to migrate into a well. Rulings on the admissibility of evidence are within the sound discretion of the trial court, and we will not disturb the trial court's ruling absent an abuse of that discretion. See Morris v. Laster, 794 So.2d 1094, 1098
(Ala. 2001).
 "`The standard applicable to a review of a trial court's rulings on the admission of evidence is determined by two fundamental principles. The first *Page 1001 
grants trial judges wide discretion to exclude or to admit evidence. "The test is that the evidence must . . . shed light on the main inquiry, and not withdraw attention from the main inquiry." Atkins v. Lee, 603 So.2d 937 (Ala. 1992) (citing Ryan v. Acuff, 435 So.2d 1244 (Ala. 1983)). The second principle "is that a judgment cannot be reversed on appeal for an error unless . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties." Atkins, 603 So.2d at 941.'"
Mock v. Allen, 783 So.2d 828, 835 (Ala. 2000) (quoting Wal-Mart Stores,Inc. v. Thompson, 726 So.2d 651, 655 (Ala. 1998)).
Evidence of other wrongs or acts may be admitted to show that an employer had knowledge of an employee's incompetence. See Rule 404(b), Ala. R. Evid.; McGowin v. Howard, 251 Ala. 204, 208, 36 So.2d 323, 325
(Ala. 1948). The Joyners proffered evidence of Johnson's previous misapplication of termiticide for the purpose of proving that BP had knowledge that Johnson was incompetent and in support of their claims that BP had negligently and wantonly trained and supervised Johnson. As discussed above, even if the trial court had admitted the evidence of Johnson's previous misapplication of termiticide, the Joyners would have failed to present substantial evidence to support their claims that BP negligently or wantonly supervised or trained Johnson. Thus, any error that the trial court might have committed by excluding evidence of Johnson's previous misapplication of termiticide was harmless. See Taylor v. General Refrigeration Sales Co., 231 Ala. 469,472, 165 So. 572, 574-75 (1936).
The Joyners next argue that the trial court erred by refusing to permit them to introduce into evidence a video animation of water flowing through the treatment holes and flooding their basement. Dr. William Payne, the structural engineer who testified on behalf of the Joyners, represented that he had taken part in preparing the video animation and that it fairly and accurately depicted the flooding that had occurred at the Joyners' residence. However, we note that the trial court, after reviewing the video animation, concluded that it distorted the evidence and refused to admit it. Rule 403, Ala. R. Evid., states, in pertinent part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." After reviewing the video animation, we cannot conclude that the trial court abused its discretion in excluding it from evidence. See Mock, supra.
The Joyners next argue that the trial court erred by allowing Joseph Lundy, Jr., a real-estate appraiser and a witness for BP, to testify regarding whether the value of the Joyners' home might have been reduced because of the termite and flooding problem. Mr. Joyner testified that he and his wife had purchased their house for $274,000 and that he believed that the house had declined in value by $100,000 because of the 1998 termite infestation and flood damage. The Joyners argue that BP knew that they would offer some testimony as to the reduction in value of their house, yet it failed to list Lundy as a witness in compliance with the trial court's pretrial order.
"Whether to allow [a] witness to testify is a matter within the sound discretion of the trial judge." Truck Rentals of Alabama, Inc. v. M.O.Carroll-Newton Co., 623 So.2d 1106, 1112 (Ala. 1993). We note that BP stated in their pretrial witness list that it would call rebuttal witnesses, that it informed the Joyners within 48 *Page 1002 
hours of the time that the decision was made to call Lundy as a witness, and that Lundy's testimony was limited to the rebuttal of Mr. Joyner's opinion that the Joyners' house might have significantly declined in value because of the 1998 termite infestation and the water damage. The decision whether to allow Lundy to testify was within the discretion of the trial court and we find no abuse of that discretion under the circumstances.
Finally, the Joyners argue that the trial court erred by allowing Joe D. Worley, an engineer, to testify regarding the possible causes of the Joyners' flooding problem. The Joyners repeatedly objected to Worley's testimony on the ground that his opinions were "speculation" because he had not actually observed the conditions at their residence. However,
 "[a] witness who has qualified as an expert may give an opinion based upon his or her own knowledge of facts, stating those facts and then his or her opinion, or he or she may give an opinion based upon hypothetical questioning as to facts already in evidence, or evidence to be subsequently admitted. Alabama Power Co. v. Robinson, 447 So.2d 148 (Ala. 1983). Where personal observation is lacking, an expert witness cannot be permitted to give his or her expert opinion until facts upon which the opinion is to be based have been properly hypothesized before him or her."
Crawford v. Hall, 531 So.2d 874, 875 (Ala. 1988). We have reviewed the record and note that Worley's testimony was based upon facts that were in evidence. The trial court did not abuse its discretion in permitting Worley to testify.
The judgment of the trial court is due to be affirmed, except as to the Joyners' claim that BP acted negligently in the manner in which it attempted to apply termiticide to the Joyners' residence. As to that claim, the trial court's judgment is due to be reversed, and the cause remanded for a new trial.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates, P.J., and Crawley, Thompson, and Pittman, JJ., concur.
[1] See Rule 50, Ala.R.Civ.P.
[2] The trial court refused to admit evidence of the alleged misapplication of termiticide for which BP was sanctioned. See
discussion, infra.