Leon F. Stamp, Jr., appeals from a judgment entered on a jury verdict in favor of Sally McCants Jackson. We affirm.
Stamp and Jackson were involved in an automobile collision when a vehicle operated by Stamp rear-ended the vehicle driven by Jackson. Jackson sued Stamp alleging that he had been under the influence of alcohol at the time of the accident and seeking compensatory and punitive damages on counts of negligence and/or wantonness, assault, and "felonious injury." *Page 276 
Jackson's insurer filed a motion to intervene, which the trial court granted, but it was later dismissed from the action before trial. At the close of Jackson's case-in-chief, she voluntarily dismissed her assault and felonious-injury counts; Stamp filed a motion for a directed verdict — now properly referred to as a motion for a judgment as a matter of law, pursuant to Rule 50, Ala. R. Civ. P. — as to the remaining count, which the trial court denied. Accordingly, Jackson's negligence and/or wantonness count was the only count to be considered by the jury. After the presentation of all the evidence, the jury returned a verdict in favor of Jackson and awarded her $25,000 in compensatory damages and $150,000 in punitive damages; the trial court entered a judgment on that verdict.
Stamp filed three alternative postjudgment motions: a postverdict motion for a judgment as a matter of law, a motion for a new trial, and a motion for a remittitur. In those motions, he challenged the admission of evidence of his previous arrests for driving under the influence and the amount of damages awarded by the jury. Both parties agreed to allow the trial court additional time to rule on Stamp's postjudgment motions. After conducting a hearing on the postjudgment motions, the trial court entered an order that stated:
 "On January 24, 2003, the court held a hearing on [Stamp's postjudgment] motions, using the Hammond
[v. City of Gadsden, 493 So.2d 1374 (Ala. 1986)]/Green Oil [v. Hornsby, 539 So.2d 218 (Ala. 1989),] factors and the supreme court's decision in BMW of North America, Inc. v. Gore, 701 So.2d 507
(Ala. 1997). Further, this court has considered [§] 6-11-21, [Ala. Code 1975,] and applicable subsections, and [§] 6-11-27, [Ala. Code 1975]. In addition to the foregoing, the court has considered the arguments of counsel, the briefs, and the authorities submitted by both sides.
 "As to the Hammond/Green Oil factors and Gore
and its progeny, the court finds as follows:
 "1. Relationship between compensatory and punitive awards.
 "The ratio is 6 to 1 and therefore within the `ratios' and `caps' provided in [§] 6-11-21(a). The court observes that the jury which rendered this verdict was attentive and deliberative throughout the trial. The compensatory award was reasonable and supported by the evidence. In addition to the awards being within the statutory limits, the jury did not award punitive damages to the extent argued by [Jackson's] counsel. However, the court feels that the $150,000 in punitive damages is somewhat on the high end of the scale.
 "2. Actual or likely harm of Defendant's misconduct.
 "Decisional authority requires focus on the deterrent effect of an award of punitive damages. Deterrence is the `component' of punitive damages which promotes the public weal. The harm of Defendant's conduct should not be viewed solely in the past tense. In fact, deterrence is and should be `forward-focused.' For this reason, and the reasons stated herein, the court finds, in addition to the harm to [Jackson], there was and is a likelihood of actual harm to one of our most essential values — public safety — should [Stamp's] misconduct go unpunished.
 "3. Degree of reprehensibility of Defendant's conduct.
 "The evidence on this factor was clear, convincing and substantial. [Stamp] clearly and consciously engaged in illegal and dangerous conduct which was likely to injure [Jackson] or other innocent motorists or both. *Page 277 
"4. Litigation costs.
 "The time and expense to litigate this case has been substantial on [Jackson]. It is noted however that [Stamp's] trial counsel made it known that he represented [Stamp] `pro-bono.' Thus the equities on this factor are assuredly in favor of [Jackson].
"5. Profitability to Defendants.
 "There was no evidence presented to the court that would indicate in any way that [Stamp] profited from his actions.
"6. Similar misconduct by Defendant.
 "During the trial, [Jackson] presented substantial evidence that [Stamp] previously engaged in similar egregious conduct; specifically [Stamp] was previously arrested for driving under the influence `at least' four times. On one of these occasions and similar to the case at hand, [Stamp] was arrested for D.U.I. [driving under the influence] after an accident with another vehicle. The court further recognizes the testimony of the law enforcement officers who testified at trial and who specifically recalled the level of intoxication of [Stamp] on these occasions and the danger he posed to the public. Because of this evidence, this factor would in no manner support [Stamp's postjudgment] motions.
"7. Other sanctions.
 "[Stamp] argued that his past and present misconduct had been addressed by the criminal justice system and that he has suffered sanctions already.
 "As to these contentions, several conclusions are inescapable. With regard to the proceedings in question: (a) [Stamp] benefitted from favorable plea bargains which continuously allowed him to escape statutorily imposed incarceration; (b) whatever sanctions [Stamp] did receive for his conduct via the criminal courts, said sanctions failed to deter his future conduct; and (c) those proceedings did not in any manner compensate [Jackson] for the injuries she suffered.
"8. Financial and economic impact on Defendants.
 "In Green Oil v. Hornsby, 539 So.2d 218 (Ala. 1989), the supreme court recited at length the concurrence in Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125, 127-128 (Ala. 1981), wherein Justice Jones aptly observed that a punitive damage[s] award `ought to be large enough to hurt. It ought to sting in order to deter; this is its purpose.' Green Oil, supra [at] 222.
 "In his initial [postjudgment] filings and in the [postjudgment] hearing, [Stamp], relying principally on [§] 6-11-21 and its subsections, contended that the verdict should be remitted due to the potential financial harm and economic impact the jury's award would have on him. In support of his position, [Stamp], a licensed and practicing attorney, submitted his state and federal tax returns for the years 1996-2001. [Stamp] also testified as to the value of his law office in which he owns a 1/2 interest and which is substantially paid for. [Stamp] also provided a 1996 appraisal and his own testimony as to the value of a parcel of waterfront property on Magnolia Springs in Baldwin County, Alabama which [Stamp] owns. The court finds [Stamp's] testimony unpersuasive. On the other hand, [Jackson] presented qualified expert testimony which conservatively established the value of the said waterfront property to be `at least' $200,000.00, approximately $100,000.00 more than the total [Stamp] owes to (a) his mortgage bank of approximately $35,000.00; (b) I.R.S. tax lien of approximately $58,516.80; and (c) the State of Alabama of approximately $8,100.00. *Page 278 
 "The foregoing considered, the court finds that [Stamp's] single most valuable asset is his ability to practice law. The award in this case will not affect or prevent [Stamp] from maintaining his law practice and continuing to earn income therefrom. The court is mindful of [Stamp's] claim that his law practice is not very lucrative[;] however, the court still finds that it is a substantial intangible asset which is far more valuable than the other assets of [Stamp]. A reduction in the jury's punitive damage[s] award will in all likelihood cost [Stamp] the waterfront property only. However, the award should sting [Stamp] and it should have detrimental effect so long as it does not destroy [Stamp]. Allowing a punitive damages award in the amount of $75,000.00 would accomplish the purpose and goals referred to herein without destroying [Stamp].
 "The foregoing considered, the court finds that the $25,000.00 compensatory award in favor of [Jackson] was supported by substantial evidence. As to the $150,000.00 punitive damages award, the court finds that the evidence clearly and convincingly supported a punitive damages award, but not the full amount assessed. Based upon the preceding analysis, the punitive damage[s] award is remitted to $75,000.00. Thus the ratio is reduced from 6:1 to 3:1. Based on the foregoing, the court ORDERS as follows:
"ORDERS ON DEFENDANT'S MOTIONS
"1. [Stamp's] motion to stay is DENIED;
 "2. [Stamp's] motion for a judgment as a matter of law; alternatively new trial is DENIED; and
 "3. [Stamp's] motion for remittitur is hereby DENIED except to the extent that it is ORDERED that [Jackson] accept a remittitur of the punitive damages from $150,000.00 to $75,000.00, or suffer the grant of a new trial."
Stamp filed a notice of appeal to the supreme court. This case was transferred to this court by the supreme court, pursuant to §12-2-7(6), Ala. Code 1975.
On appeal, Stamp argues (1) that the trial court erred in allowing Jackson to introduce evidence of his prior arrests for driving under the influence; (2) that the trial court erred in denying his motion for a judgment as a matter of law as to Jackson's wantonness claim; (3) that the evidence was insufficient to support an award of punitive damages; and (4) that the punitive-damages award was excessive.
 I. Evidence of Prior Arrests
Stamp contends that the trial court erred in allowing Jackson to introduce evidence of his prior arrests for driving under the influence. Stamp specifically argues (1) that the testimony and exhibits relating to his prior arrests were evidence of "other crimes, wrongs, or acts," which are inadmissable pursuant to Rule 404(b), Ala. R. Evid.; (2) that the evidence of his prior arrests were too remote to be considered relevant evidence of intent under Rule 404(b); and (3) that the evidence was irrelevant to the issue being litigated and that it was so prejudicial that it deprived him of a fair trial. In addressing these issues, we are mindful that "`[t]he trial court's decision to admit or to exclude evidence is within its sound discretion, and that decision will not be reversed on appeal absent a showing of an abuse of discretion.'" B.S.L. v. S.E., 826 So.2d 890, 894
(Ala.Civ.App. 2002), quoting Roberts v. Roberts, 802 So.2d 230,236 (Ala.Civ.App. 2001).
A review of the trial transcript shows that Stamp's counsel made a general objection when Stamp was first asked *Page 279 
by Jackson's counsel about his prior driving-under-the-influence arrests. In making the general objection, Stamp's counsel made reference to a pretrial ruling by the trial court — which would suggest that Stamp had filed a motion in limine. However, the record does not contain any motion in limine filed by Stamp or a pretrial ruling relating to Stamp's prior arrests.
 "[A]n appellant who suffers an adverse ruling on a motion to exclude evidence (or other matters, e.g., argument of counsel), made in limine, preserves this adverse ruling for post-judgment and appellate review only if he objects to the introduction of the proffered evidence or other matters and assigns specific grounds therefor at the time of trial, unless he has obtained express acquiescence of the trial judge that such subsequent objection to evidence proffered at trial and assignment of grounds therefor are not necessary."
Liberty Nat'l Life Ins. Co. v. Beasley, 466 So.2d 935, 936
(Ala. 1985). A review of the record shows that Stamp's counsel failed to make a specific objection at trial, and it does not indicate that the trial judge gave his express acquiescence to do away with the necessity of such an objection. Accordingly, as to the admission of this evidence, Stamp has failed to preserve any adverse ruling by the trial court for this court to review.
 II. Jackson's Wantonness Claim
Stamp contends that the trial court erred by denying his motion for a judgment as a matter of law at the end of Jackson's case-in-chief because, he says, Jackson failed to present substantial evidence to support her wantonness claim.
 "`The standard of review applicable to a motion for directed verdict or judgment notwithstanding the verdict [now referred to as preverdict and postverdict motions for a judgment as a matter of law] is identical to the standard used by the trial court in granting or denying the motions initially. Thus, when reviewing the trial court's ruling on either motion, we determine whether there was sufficient evidence to produce a conflict warranting jury consideration. And, like the trial court, we must view any evidence most favorably to the non-movant.'"
Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177 (Ala. 1998) (quoting Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala. 1988)) (citations omitted in Glenlakes Realty). This court has further observed that:
 "`"[w]antonness" is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975, § 6-11-20(b)(3).
 "`"`Wantonness' has been defined by the [Alabama Supreme] Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. McDougle v. Shaddrix, 534 So.2d 228 (Ala. 1988)."
 "`Stone v. Southland Nat'l Ins. Corp., 589 So.2d 1289, 1292 (Ala. 1991). "Wantonness is the doing of some act or omission with reckless indifference to the knowledge that such act or omission will likely or probably result in injury." Bishop v. Poore, 475 So.2d 486, 487 (Ala. 1985); Anderson v. Moore Coal Co., 567 So.2d 1314, 1317 (Ala. 1990).'
 "Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala. 1994). A [judgment as a matter of law] is appropriate on a wantonness claim if the plaintiff has failed to offer substantial evidence showing *Page 280 
that the defendant knew that its act or omission would likely or probably result in injury. See Anderson v. Moore Coal Co., 567 So.2d 1314, 1317
(Ala. 1990)."
Joyner v. B P Pest Control, Inc., 853 So.2d 991, 998-99
(Ala.Civ.App. 2002).
Considering Stamp's motion for a judgment as a matter of law in a light most favorable to Jackson, we conclude that she offered substantial evidence to support her wantonness claim. It was undisputed that, at the time of the accident, Stamp was arrested for driving under the influence, and that he later pleaded guilty to that charge. It was also undisputed that Stamp had been arrested for driving under the influence on at least four prior occasions, one of which also involved an automobile accident. Thus, from the evidence presented by Jackson, whether or not Stamp's choosing to drive his automobile after becoming intoxicated in this instance was an act that he should have known would likely or probably cause injury was an issue for the jury to determine.
 III. Punitive Damages
Stamp contends that Jackson failed to present sufficient evidence to support an award of punitive damages and, alternatively, that the amount of the punitive-damages award was excessive.
A. Evidence Supporting Award of Punitive Damages
As stated by Stamp in his brief to this court on appeal, §6-11-20(a), Ala. Code 1975, sets out when punitive damages may be awarded. That section states, in pertinent part, as follows:
 "(a) Punitive damages may not be awarded in any civil action . . . other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff."
Our supreme court has also stated that "[i]n reviewing punitive damages awards, this Court must presume that the jury awarded the proper amount of punitive damages and may not disturb the verdict on the ground of insufficiency of the evidence unless it appears that the verdict was `plainly and palpably wrong and unjust.'"Gold Kist, Inc. v. Griffin, 657 So.2d 826, 830 (Ala. 1994) (quoting Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313,322 (Ala. 1992)). As discussed above, Jackson presented sufficient evidence in support of her wantonness claim; given that the jury in this case was the ultimate trier of fact, we cannot say that it erred in determining that the evidence supporting that claim was clear and convincing, and it does not appear that the verdict was otherwise "plainly and palpably wrong and unjust."
B. Amount of Punitive-Damages Award
Stamp's last contention is that the amount of the punitive-damages award was excessive. The jury awarded Jackson $150,000 in punitive damages; the trial court reduced the award to $75,000 after conducting a hearing on Stamp's postjudgment motions, and it set out detailed findings as required by Hammondv. City of Gadsden, 493 So.2d 1374 (Ala. 1986). Our supreme court has stated the appropriate standard of review as follows:
 "When considering a defendant's argument that a punitive-damages award is excessive, we consider the `guideposts' established by the United States Supreme Court in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and the factors set forth in Hammond v. City of *Page 281 Gadsden, 493 So.2d 1374 (Ala. 1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989).[1] See Employees' Benefit Ass'n v. Grissett, 732 So.2d 968, 978 (Ala. 1998). In Gore
the United States Supreme Court provided three `guideposts' for courts to use in reviewing a punitive-damages award: (1) the reprehensibility of the defendant's conduct; (2) the ratio of the punitive-damages award to the compensatory-damages award; and (3) a comparison of the award of punitive damages to the civil or criminal penalties that could be imposed for comparable misconduct. Montgomery Coca-Cola Bottling Co. v. Golson, 725 So.2d 996, 1000 (Ala.Civ.App. 1998). We have determined that the Supreme Court's requirement that a court consider these new guideposts does not preclude a court from considering the factors set our earlier in Hammond
and Green Oil. BMW of North America, Inc. v. Gore, 701 So.2d 507 (Ala. 1997)."
AutoZone, Inc. v. Leonard, 812 So.2d 1179, 1187 (Ala. 2001). Further, our review of a trial court's determination whether a jury's punitive-damages award was excessive is de novo. SeeOrkin Exterminating Co. v. Jeter, 832 So.2d 25, 39 (Ala. 2001) (quoting Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001), and citingAcceptance Ins. Co. v. Brown, 832 So.2d 1 (Ala. 2001)).
Considering the relevant factors set out in Gore, Hammond, and Green Oil, the trial court's detailed findings as it related to the evidence presented at trial, and the arguments presented in Stamp's brief to this court on appeal, we cannot conclude that the trial court's reduced award of $75,000 in punitive damages was excessive. The trial court's judgment, including the reduced punitive-damages award, is therefore due to be affirmed.
AFFIRMED.
YATES, P.J., and MURDOCK, J., concur.
THOMPSON, J., concurs in the result, without writing.
PITTMAN, J., recuses himself.
[1] Those factors are the relationship to the harm that is likely to occur or that has actually occurred; the degree of reprehensibility of the defendant's conduct; the profit to the defendant as a result of wrongful conduct; financial position of the defendant; the costs of litigation; whether criminal sanctions have been imposed; and whether there have been other civil actions against the same defendant.