[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 799 
Joseph Lynn Story, the plaintiff below, appeals from summary judgments entered against him by the Shelby Circuit Court based on Story's spoliation of the evidence. We affirm.
Story is the occupant and first owner of a house located in Wilsonville. Story purchased the house from its builder, RAJ Properties, Inc. ("RAJ"), in November 1993. The exterior of the house was finished with an exterior insulation and finishing system ("EIFS"), commonly referred to as synthetic stucco. In April 2001, Story hired Central Alabama Home Inspections to inspect his house. The inspection was conducted by Dusty Darring, president and owner of Central Alabama Home Inspections. The inspection allegedly revealed moisture problems, which Darring concluded were caused by the improper installation of the EIFS.
On July 3, 2001, Story sued RAJ and TEC Specialty Products, Inc., f/k/a TEC, Inc., and H.B. Fuller Company, Inc. (hereinafter referred to collectively as "TEC"). Story alleged that TEC manufactured the EIFS that was applied to his house. Story sued Birmingham Drywall, Inc., which installed the EIFS, and General Coatings, Inc., the distributor of the EIFS. (RAJ, TEC, Birmingham Drywall, Inc., and General Coatings, Inc., are hereinafter collectively referred to as the "EIFS defendants.") Story later amended his complaint to add Wayne's Pest Control as a defendant. Wayne's Pest Control is not a party to this appeal.[1] As to the EIFS defendants, Story claimed breach of express warranty, breach of implied warranty of fitness for intended use, negligent failure to warn, negligent design, negligent installation and construction, negligent supervision, misrepresentation, suppression, deceit, breach of implied warranty of habitability, breach of contract, and liability under the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD").
Approximately two to three months after he filed his complaint, Story began extensive repair work on his house, including removal of the EIFS, repair of the alleged damage, and recladding the house with a brick exterior. The repair work took place from September 2001 to March 2002.[2] During the course of the repairs, Story took numerous photographs of the *Page 800 
alleged damage to the house.[3] However, Story did not inform the EIFS defendants that repairs were being made until after the repairs had been completed. As a result, none of the EIFS defendants inspected the alleged damage to the house during the course of the repairs, although they did make some effort to do so.
Between the time RAJ answered Story's complaint in November 2001 and the time its expert actually inspected the house in July 2002, inspection of the Story house by RAJ had been scheduled on at least three different dates. RAJ and Story disagree as to who was responsible for the various cancellations and delay in conducting the inspection; however, the record is clear that RAJ's counsel and Story's counsel communicated on the matter of RAJ's inspecting the house, but that Story's counsel never informed RAJ's counsel that repairs were ongoing until April 15, 2002, when the work on the house was completed. When RAJ's expert, Rayford Smith, inspected Story's house on July 26, 2002, all of the EIFS had been removed and the house had been reclad with brick. Smith testified that it was, therefore, impossible for him to determine the extent and cause of any damage to the Story house from the EIFS.
TEC also retained an expert, Nick Cvetetic of Southern Inspection Company, to inspect the EIFS on the Story house. Cvetetic testified by affidavit that, when he arrived at the Story house on January 12, 2002, the EIFS had been removed, the alleged damage repaired, and the house had been almost entirely reclad with brick. TEC asserts that it was unaware repairs were ongoing until Cvetetic's discovery of that fact. Cvetetic testified that because the repairs to the house already had been made, he was prevented from determining who had manufactured the EIFS that had been applied to Story's house, whether the application of the EIFS conformed to manufacturer's specifications and guidelines, and the extent and cause of any damage.
On August 29, 2001, Birmingham Drywall and General Coatings submitted interrogatories and a request for production to Story. Story failed to respond until April 12, 2002 — after the repair work to the house was completed. Birmingham Drywall and General Coatings allege that, through those discovery responses, they learned for the first time that repairs had been made to the Story house. They then retained an expert, Jim Robinson, to inspect the house. However, Robinson testified that he did not inspect the house because such an inspection would have been futile: the EIFS had been removed, any alleged damage to the house had been repaired, and the house had been reclad with brick.
Unable to inspect the house during the repair process, RAJ, TEC, Birmingham Drywall, and General Coatings moved for summary judgments, alleging spoliation of the evidence. Story responded that his house had been available for inspection during the repair process, that he took photographs in an effort to preserve the evidence, that those photographs were available for use by the EIFS defendants, that he went forward with the repairs to the house because he believed the house would collapse if the repairs were not made, and that some of the EIFS material was available for inspection. *Page 801 
The trial court entered summary judgments for RAJ, TEC, Birmingham Drywall, and General Coatings solely on the ground of spoliation of the evidence. In the same order, the trial court denied Wayne's Pest Control's motion for a summary judgment on the ground of spoliation of the evidence. The trial court noted that Wayne's Pest Control had been provided the opportunity to inspect the Story house during the time the repairs were being made to the house. The trial court stated:
 "It is undisputed that [the EIFS defendants] were not notified that any repairs were being performed on the home until the work was substantially completed. None of the EIFS Defendants were afforded the opportunity to inspect the home, either prior to, or during the repairs. The EIFS Defendants' experts have filed affidavits stating that they are unable to ascertain the true extent, cause and/or origin of the alleged damage to [Story's] home, as they were denied the opportunity to inspect the home prior to or during the performance of the repair work.[4]
 "The Court finds that as there exist no genuine issues of material fact and that the EIFS Defendants are entitled to judgment as a matter of law. Accordingly, it is ordered that, pursuant to the spoliation of the evidence doctrine, the Motions for Summary Judgment filed by [the EIFS defendants] are, granted."
The trial court certified the summary judgments for the EIFS defendants as final pursuant to Rule 54(b), Ala. R. Civ. P. Story appeals.
Story argues that the trial court erred in entering summary judgments in favor of the EIFS defendants on the ground of spoliation of the evidence because, he says, (1) the EIFS defendants had an adequate opportunity to inspect the house at all phases of the repair process but chose not to do so, and (2) the photographs of the house taken by Story and attached to Edwards's affidavit and the photographs taken by Story's expert, Dusty Darring, and attached to the inspection report prepared by Darring are available as alternative sources of information for the EIFS defendants. Story also argues that there is a genuine issue of material fact as to whether the photographs he and Darring took of the alleged damage can serve to form the basis of the opinions of the EIFS defendants; thus, he argues, summary judgment was improper.
Our review of a summary judgment is de novo. "In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact," Busseyv. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was "entitled to a judgment as a matter of law," Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 *Page 802 
(Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990).
In determining whether the summary judgments for the EIFS defendants were proper on the ground of spoliation of the evidence, we consider whether the trial court exceeded its discretion in entering the summary judgments instead of imposing another, less severe, sanction against Story. See, e.g., VestaFire Ins. Corp. v. Milam Co. Constr., Inc., 901 So.2d 84 (Ala. 2004); Cincinnati Ins. Co. v. Synergy Gas, Inc., 585 So.2d 822
(Ala. 1991); Iverson v. Xpert Tune, Inc., 553 So.2d 82 (Ala. 1989); and Copenhagen Reinsurance Co. v. Champion Home BuildersCo., 872 So.2d 848 (Ala.Civ.App. 2003).
We first address Story's contention that a summary judgment was not proper because there is a genuine issue of material fact as to whether his photographs of the house at various stages of the repair process were sufficient to demonstrate the EIFS damage. The EIFS defendants' experts testified, in essence, that, based on those photographs, they cannot form an opinion as to the cause of the damage allegedly shown in the photographs. However, Story's expert contends that the photographs clearly reveal damage caused by the EIFS. A summary judgment should be entered against a plaintiff only when there is no genuine issue of material fact and the defendant moving for the summary judgment is entitled to judgment as a matter of law. Rule 56(c), Ala. R. Civ. P. When a motion for a summary judgment is made and properly supported, the nonmovant must respond by setting forth "specific facts showing that there is a genuine issue for trial," Rule 56(e), Ala. R. Civ. P., that is, an issue requiring determination by the factfinder. Horner v. First Nat'l Bank of Mobile,473 So.2d 1025, 1027 (Ala. 1985). The issue Story asserts to be in dispute, however, is not one requiring a determination by the factfinder; it does not go to the merits of his case. Instead, the issue Story says is in dispute goes to whether the sanction of a summary judgment entered on the ground of spoliation of the evidence was appropriate. That determination is one for the trial court to make. See, e.g., Verchot v. General Motors Corp.,812 So.2d 296 (Ala. 2001) (recognizing that a trial court's summary judgment may be warranted in cases of spoliation of the evidence); Alfa Mut. Ins. Co. v. Ray's Refrigeration,682 So.2d 452 (Ala. 1996) (affirming the trial court's summary judgment as a sanction for spoliation of the evidence); Capitol Chevrolet,Inc. v. Smedley, 614 So.2d 439 (Ala. 1993) (reversing the trial court's judgment because it did not dismiss the case as a sanction for spoliation of the evidence, notwithstanding that such a dismissal would preclude adjudication).
Our cases and those of the Court of Civil Appeals have approved the entry of a summary judgment as a sanction against a plaintiff in certain instances of spoliation. See, e.g., Verchot,812 So.2d 296; Ray's Refrigeration, 682 So.2d 452; Smedley,614 So.2d 439; Thompson v. Gardner,, 889 So.2d 596 (Ala.Civ.App. 2004); Copenhagen Reinsurance Co. v. Champion Home BuildersCo., 872 So.2d 848 (Ala.Civ.App. 2003); and Vesta Fire Ins.Corp. v. Sears, Roebuck Co., 705 So.2d 382 (Ala.Civ.App. 1996).
This Court has applied five factors in analyzing a spoliation-of-the-evidence issue: (1) the importance of the evidence destroyed; (2) the culpability of the offending party; (3) fundamental fairness; (4) alternative sources of the information *Page 803 
obtainable from the evidence destroyed; and (5) the possible effectiveness of other sanctions less severe than dismissal.Vesta Fire, 901 So.2d at 94-95. As we noted in Vesta Fire, this Court has not expressly adopted the four-factor analysis first referenced in Cincinnati Insurance Co. v. Synergy Gas,Inc., 585 So.2d 822 (Ala. 1991).[5] We used those four factors in Vesta Fire because the parties had discussed them in their briefs and because those factors "provide a useful template for an orderly analysis of relevant considerations."901 So.2d at 95. We also recognized in Vesta Fire that a fifth factor — the possible effectiveness of less severe sanctions than dismissal, or, in this case, a summary judgment — is pertinent. Id.
Because all five factors are useful in this case, we once again apply them.
1. Importance of the evidence destroyed.
The importance of the evidence destroyed must be evaluated in the context of the importance of the evidence preserved or otherwise available. Vesta Fire, 901 So.2d at 95. Story asserts that there is significant other evidence available of the damage allegedly caused by the EIFS. Story points to the photographs attached to the EIFS inspection report prepared by Dusty Darring of Central Alabama Home Inspections, who inspected the Story house at Story's request before Story sued the EIFS defendants. Darring's inspection resulted in a nearly 100-page report, which includes numerous photographs taken by Darring depicting the damage to Story's house allegedly caused by the EIFS. Darring testified that the photographs in the report demonstrate that "it is clear that the Story home suffered from moisture intrusion and damage caused" by "EIFS installation not consistent with manufacturer's recommended guidelines." Story also points to the additional photographs he took during the course of the repairs to the house. Tom Edwards, whom Story hired to perform some of the repairs to the Story house, testified that the photographs taken by Story truly and accurately represent the condition of the Story house and are representative of water intrusion and water damage.[6]
The EIFS defendants refute the usefulness of the photographs. They argue that the removal of the EIFS and the completion of repairs to the house without an inspection by their own experts severely impaired their ability to defend themselves. The EIFS defendants' experts have testified that they are unable to determine the extent or cause of the damage to Story's house based on the existing photographs. Most notably, TEC asserts that without inspecting a sample of the EIFS material it cannot determine whether TEC manufactured the EIFS applied to Story's house.[7] *Page 804 
In reviewing the trial court's decision, we consider whether the trial court exceeded its discretion in entering the summary judgments for the EIFS defendants instead of imposing another, less severe, sanction. Vesta Fire, 901 So.2d at 95. The trial court is in a better position than is an appellate court to determine whether the remaining evidence could substitute for the destroyed evidence. It is far from clear that photographs are an adequate substitute for the item itself and for an analysis of that item. The trial court had before it evidence indicating that the evidence destroyed was important, if not essential, to the EIFS defendants' defense. We do not find with respect to this factor that the trial court exceeded its discretion in entering summary judgments for the EIFS defendants on the ground of spoliation of the evidence instead of imposing some less severe sanction.
2. Culpability of the offending party.
In a case of classic spoliation, "the offending party `purposefully' and `wrongfully' destroyed evidence `he knew was supportive of the interest of his opponent.'" Vesta Fire,901 So.2d at 96 (quoting May v. Moore, 424 So.2d 596, 603 (Ala. 1982), and citing Alabama Power Co. v. Murray, 751 So.2d 494,497 (Ala. 1999)). We have approved of the sanction of the entry of a summary judgment against a plaintiff for spoliation of the evidence where all relevant evidence was destroyed and the plaintiff fully appreciated the significance of the evidence to the anticipated litigation. See Verchot, 812 So.2d 296 andSmedley, 614 So.2d 439. We have reversed a summary judgment based on spoliation of the evidence where the plaintiff did not act willfully in destroying the evidence. See Joyner v. B.P.Pest Control, Inc., 853 So.2d 991 (Ala.Civ.App. 2002). Story argues that he was not culpable in that he believed he had to make the repairs to the house because he was told that if he did not do so, his house could collapse.[8] In addition, Story says, he had a duty to mitigate his damages. The EIFS defendants respond that they did not ask that Story refrain from making repairs, but only that he afford them an opportunity to inspect the house during the repairs. They argue that Story is to blame for their not having inspected the house during the repair process because Story should have notified, and did not notify, them that repairs were ongoing. The EIFS defendants assert that Story understood the importance of the evidence destroyed, as evidenced by the numerous photographs he took of the alleged damage and the repairs. They further argue that Story should be held to a higher duty to preserve evidence because he was represented by counsel when he proceeded with the repairs.
There was evidence to support a conclusion by the trial court that Story was culpable in preventing the EIFS defendants from inspecting the house. Story's counsel had significant contacts with RAJ's counsel regarding scheduling an inspection date. Yet, until April 15, 2002, by which time the repairs had been completed, Story's counsel did not inform RAJ's counsel *Page 805 
that repairs to the house were proceeding. TEC was unaware that repairs were proceeding until its expert arrived at Story's house to perform an inspection. Story did not respond to Birmingham Drywall and General Coatings' discovery requests until after they were six months overdue and the repairs had been completed. Birmingham Drywall and General Coatings learned from those responses that repairs had been made. Story apparently recognized the importance of the evidence; he took numerous photographs of the alleged damage, he says, in an effort to preserve the evidence.[9]
Although there does not appear to be any direct evidence indicating that Story knew or believed that inspections by the EIFS defendants' experts of his house before the repairs were made and of the EIFS material would be favorable to the EIFS defendants, the trial court could have inferred that Story knew that those inspections would not be beneficial to his case or he would not have destroyed the EIFS material and evaded the inspections. Thus, an analysis of this factor does not indicate that the trial court exceeded its discretion in entering summary judgments against Story instead of imposing some less severe sanction.
3. Fundamental fairness.
The EIFS defendants argue that it would be fundamentally unfair for them to be forced to defend themselves without having had the opportunity to inspect the Story house before the repairs were completed. It appears that Story retained what evidence he needed to prove his case — the photographs and inspection reports of his expert, who was afforded the opportunity to inspect the materials in place — but, by repairing his house without giving the EIFS defendants notice and by destroying, by his own admission, all but "some of the EIFS material," he has prevented the EIFS defendants from gathering additional evidence to support their defenses. Thus, this factor weighs against Story and does not indicate that the trial court exceeded its discretion in entering summary judgments for the EIFS defendants on the ground of spoliation of the evidence instead of imposing some less severe sanction.
4. Alternative sources of information.
The trial court had before it substantial evidence indicating that the evidence destroyed in repairing the house was important, if not essential, to the EIFS defendants' defense. The trial court is in the best position to determine whether the photographs, as alternative sources of the information that would have been conveyed by the evidence destroyed, could substitute for the destroyed evidence. Our analysis of this factor and our consideration of the record before us do not indicate that the trial court exceeded its discretion in entering summary judgments for the EIFS defendants on the ground of spoliation of the evidence instead of imposing some less severe sanction.
5. Restriction of claims; alternative sanctions.
As we stated in Vesta Fire, in fashioning a remedy for a plaintiff's spoliation *Page 806 
of the evidence, the trial court may restrict the plaintiff's claims to those based on the remaining evidence. It may also disallow or restrict any claim predicated indispensably on evidence no longer available. 901 So.2d at 97. The Court of Civil Appeals noted in a similar case involving EIFS that the destroyed EIFS materials were "the evidence" in the case. Thompson,889 So.2d at 597. Moreover, the trial court in this case distinguished between the EIFS defendants, who were not given an opportunity to inspect, and the one defendant that was. The trial court denied a summary-judgment motion filed by Wayne's Pest Control because Story provided Wayne's Pest Control with the opportunity to inspect the damage to his house. We cannot conclude that the trial court exceeded its discretion in entering summary judgments on Story's claims against the EIFS defendants on the ground of spoliation of the evidence instead of imposing some less severe sanction.
 Conclusion
Although this Court has a "long-established and compelling policy objective of affording litigants a trial on the merits whenever possible," Iverson, 553 So.2d at 89, we conclude, after a careful review of Story's conduct and the effect of that conduct on the ability of the EIFS defendants to defend themselves, that the trial court did not exceed its discretion in entering summary judgments in favor of the EIFS defendants.
AFFIRMED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] Story alleged that Wayne's Pest Control intentionally failed to send Story an annual premium notice for termite insurance because it considered Story's house at high risk for water and moisture collection and that the damage to Story's house may have been caused in part by termite infestation.
[2] The parties rely on records reflecting the dates on which Story paid the contractors. Thus, these dates may or may not be precisely accurate.
[3] There are in the record approximately 65 pages of photographs, each page containing from one to four photographs taken by Story. They appear as attachments to the affidavit of Tom Edwards, who was involved in the repair of the Story house and who has testified by way of affidavit that the photographs are consistent with the damage he observed while making the repairs to the house.
[4] The trial court does not mention the affidavit of Story's expert, Dusty Darring, which states that the photographs attached to his inspection report make "clear that the Story home suffered from moisture intrusion and damage caused" by "EIFS installation not consistent with manufacturer's recommended guidelines."
[5] Other courts, however, have understood this Court to have approved, if not adopted, the use of the four-factor analysis.See Cooper v. Toshiba Home Tech Corp., 76 F.Supp.2d 1269, 1274
(M.D.Ala. 1999), Joyner v. B P Pest Control, Inc.,853 So.2d 991 (Ala.Civ.App. 2002), and Thompson v. Gardner, 889 So.2d 596
(Ala.Civ.App. 2004).
[6] Darring has also testified that the photographs taken by Story are consistent with the damage he observed and photographed during his inspection of the Story house.
[7] The EIFS defendants rely on Thompson v. Gardner,889 So.2d 596 (Ala.Civ.App. 2004), a case also involving EIFS, in which the plaintiff had taken numerous photographs of the house during the recladding work, and the defendant's experts testified that they were unable to determine from the photographs the cause or extent of any EIFS damage. In entering a summary judgment on the ground of spoliation of the evidence, the trial court found that the EIFS that had been destroyed during the repair work was "the evidence" in the case. The Court of Civil Appeals affirmed the summary judgment. We recognize that, in Thompson, the testimony of the defendant's experts was undisputed, whereas Story has presented an expert who disputes the testimony of the EIFS defendants' experts and who testified that EIFS damage can be determined from the existing photographs.
[8] Story testified by affidavit that he believed that his house would collapse if the repairs were not made immediately, and Tom Edwards's testimony supports Story's concern. Edwards states in his affidavit that "if the repairs to the Story home had not been started immediately, the probability existed for the imminent collapse of portions of the Story home."
[9] Story apparently did preserve some EIFS material for a period of time. Story's affidavit of June 13, 2003, states: "The EIFS material was available for inspection past the summer of 2002 and . . . some of the EIFS material is still available for inspection." Story does not explain how or why all but "some of the EIFS material" was destroyed after the summer of 2002. Nor does Story argue to this Court that any EIFS material remained available for inspection at the time the trial court entered summary judgments in favor of the EIFS defendants.